# EXHIBIT 1

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)
MAY 2018
001178
E-Filing Number: 1805033702

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| MARK R. CUKER | ESTHER E. BEREZOFSKY |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| 2005 MARKET STREET SUITE 1120 PHILADELPHIA PA 19103 | 40 WEST EVERGREEN AVENUE SUITE 104 PHILADELPHIA PA 19118 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| CUKER LAW FIRM, LLC | BEREZOFSKY LAW GROUP |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| 2005 MARKET STREET SUITE 1120 PHILADELPHIA PA 19103 | 40 WEST EVERGREEN AVENUE SUITE 104 PHILADELPHIA PA 19118 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| | |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| | |

TOTAL NUMBER OF PLAINTIFFS: 2

TOTAL NUMBER OF DEFENDANTS: 2

COMMENCEMENT OF ACTION
- [x] Complaint
- [ ] Petition Action
- [ ] Notice of Appeal
- [ ] Writ of Summons
- [ ] Transfer From Other Jurisdictions

AMOUNT IN CONTROVERSY
- [ ] $50,000.00 or less
- [x] More than $50,000.00

COURT PROGRAMS
- [ ] Arbitration
- [ ] Jury
- [ ] Non-Jury
- [ ] Other:
- [ ] Mass Tort
- [ ] Savings Action
- [ ] Petition
- [x] Commerce
- [ ] Minor Court Appeal
- [ ] Statutory Appeals
- [ ] Settlement
- [ ] Minors
- [ ] W/D/Survival

CASE TYPE AND CODE
1O - CONTRACTS OTHER

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

FILED
PRO PROTHY
MAY 14 2018
C. FORTE

IS CASE SUBJECT TO COORDINATION ORDER?
YES NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: MARK R CUKER , CUKER LAW FIRM, LLC

Papers may be served at the address set forth below.

NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY
MARK R. CUKER

ADDRESS
CUKER LAW FIRM, LLC
ONE COMMERCE SQUARE
2005 MARKET STREET, SUITE 1120
PHILADELPHIA PA 19103

PHONE NUMBER
(215)531-8512

FAX NUMBER
(215)569-9788

SUPREME COURT IDENTIFICATION NO.
21182

E-MAIL ADDRESS
mark@cukerlaw.com

SIGNATURE OF FILING ATTORNEY OR PARTY
*MARK CUKER*

DATE SUBMITTED
Monday, May 14, 2018, 04:51 pm

FINAL COPY (Approved by the Prothonotary Clerk)

## COMMERCE PROGRAM ADDENDUM TO CIVIL COVER SHEET

This case is subject to the Commerce Program because it is not an arbitration matter and it falls within one or more of the following types (check all applicable):

X 1. Actions relating to the internal affairs or governance, dissolution or liquidation, rights or obligations between or among owners (shareholders, partners, members), or liability or indemnity of managers (officers, directors, managers, trustees, or members or partners functioning as managers) of business corporations, partnerships, limited partnerships, limited liability companies or partnerships, professional associations, business trusts, joint ventures or other business enterprises, including but not limited to any actions involving interpretation of the rights or obligations under the organic law (e.g., Pa. Business Corporation Law), articles of incorporation, by-laws or agreements governing such enterprises;

X 2. Disputes between or among two or more business enterprises relating to transactions, business relationships or contracts between or among the business enterprises. Examples of such transactions, relationships and contracts include:

___ a. Uniform Commercial Code transactions;

___ b. Purchases or sales of business or the assets of businesses;

___ c. Sales of goods or services by or to business enterprises;

___ d. Non-consumer bank or brokerage accounts, including loan, deposit cash management and investment accounts;

___ e. Surety bonds;

___ f. Purchases or sales or leases of, or security interests in, commercial, real or personal property; and

___ g. Franchisor/franchisee relationships.

___ 3. Actions relating to trade secret or non-compete agreements;

X 4. "Business torts," such as claims of unfair competition, or interference with contractual relations or prospective contractual relations;

___ 5. Actions relating to intellectual property disputes;

___ 6. Actions relating to securities, or relating to or arising under the Pennsylvania Securities Act;

___ 7. Derivative actions and class actions based on claims otherwise falling within these ten types, such as shareholder class actions, but not including consumer class actions, personal injury class actions, and products liability class actions;

___ 8. Actions relating to corporate trust affairs;

___ 9. Declaratory judgment actions brought by insurers, and coverage dispute and bad faith claims brought by insureds, where the dispute arises from a business or commercial insurance policy, such as a Comprehensive General Liability policy;

___ 10. Third-party indemnification claims against insurance companies where the subject insurance policy is a business or commercial policy and where the underlying dispute would otherwise be subject to the Commerce Program, not including claims where the underlying dispute is principally a personal injury claim.

CUKER LAW FIRM, LLC
**MARK R. CUKER, ESQUIRE**
Attorney I.D. # 21182
One Commerce Square
2005 Market Street, Suite 1120
Philadelphia, PA 19103
mark@cukerlaw.com
Tel: (215) 531-8512




| | | |
|---|---|---|
| MARK R. CUKER<br>2005 Market Street, Suite 1120<br>Philadelphia, PA 19103<br><br>CUKER LAW FIRM, LLC<br>2005 Market Street, Suite 1120<br>Philadelphia, PA 19103<br><br>Plaintiffs,<br><br>vs.<br><br>ESTHER E. BEREZOFSKY<br>and BEREZOFSKY LAW GROUP LLC<br>40 West Evergreen Avenue<br>Suite 104<br>Philadelphia, PA 19118-3324<br><br>Defendant. | : | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>CIVIL ACTION<br><br>No.<br><br>COMPLAINT IN EQUITY |

## PARTIES

1. Plaintiff Mark R. Cuker, Esquire is an attorney admitted to practice in the Commonwealth of Pennsylvania. Cuker is a citizen of Pennsylvania with an address at One Commerce Square, Suite 1120, Philadelphia Pennsylvania 19103, and is the sole member of Cuker Law Firm, LLC, which does business at the same address. Mark Cuker and Cuker Law Firm shall be referred to herein as "Plaintiffs".

2. Defendant Esther Berezofsky, Esquire is an attorney admitted to practice in the Commonwealth of Pennsylvania, and is the sole member of Defendant Berezofsky Law Group LLC, both of which have an address at 40 West Evergreen Avenue, Suite 104, Philadelphia, PA 19118-3324.

## FACTUAL BACKGROUND

### Background of the Dispute between Plaintiffs and Berezofsky

3. The Parties were partners in the Law Firm of Williams Cuker Berezofsky, ("WCB") as set forth in a partnership agreement dated November, 2000 and reiterated in an LLC Operating Agreement dated March 2012.

4. Under the terms of the agreements, profits of the firm were to be divided equally among the three named partners, Williams, Cuker, and Berezofsky.

5. WCB had offices in Philadelphia and Cherry Hill, N.J. At least two-thirds of employees worked in the Philadelphia office, including the firm's bookkeeper, and that is where the original financial records are still kept. Two of the partners, Cuker and Williams, primarily worked out of the Philadelphia office, and Berezofsky primarily worked out of the New Jersey office.

6. The firm's practice was concentrated in complex environmental and toxic exposure, mass tort and class action litigation. Because of the protracted and expensive nature of this litigation, cash flow was irregular, requiring the firm to depend on a line of credit to fund operations.

7. In January, 2017, due to inadequate cash flow, WCB had exhausted its credit line and could not fund ongoing operations without either employee layoffs or partner contributions to keep operations going. For the next several months, Cuker and Williams contributed, between them, over $300,000 to keep operations going. Berezofsky contributed nothing. She did, however, continue to take a $4,000 weekly draw, which was only possible because of money contributed by Cuker and Williams. During this relevant time period, Berezofsky took about $80,000 in draws.

8. Eventually, differences among the partners reached the point when a mutual decision was made to dissolve WCB and for the partners to continue practicing law with different entities. Accordingly, the three partners proceeded to enter into a Dissolution Agreement without any plan for them to continue to practice together.

9. The Dissolution Agreement ("DA") was executed on or about September 18, 2017 by all three partners in WCB, namely Williams, Cuker and Berezofsky; a copy of the agreement, redacted to protect confidential information, is attached as Exhibit "A".

10. The Dissolution Agreement provides for the allocation and transfer of cases to the three partners' new law firms. Attached to the Dissolution Agreement is Schedule 1, which provides for the allocation of the various cases and matters. This Schedule is and has been referred to as the "Case Grid". Some cases and matters were transferred solely to one particular new firm and other cases and matters where to be transferred to more than one new firm in which case more

than one WCB named partner would function as co-counsel ("Co-Counsel Cases"). The Co-Counsel Cases are to be handled jointly by the respective new firms and are specifically designated on Schedule 1 as "Co-Counsel Cases".

**COUNT I**

**BREACH OF DISSOLUTION AGREEMENT AGAINST BEREZOFSKY**

11. Plaintiff incorporates the averments of the paragraphs above as though fully set forth herein.

12. Berezofsky willfully and intentionally breached and continues to be in breach of the clear terms of the Dissolution Agreement. This breach has and will continue to cause harm to Plaintiffs.

13. The current dispute arises from, *inter alia*, the following breaches by Berezofsky: (1) Berezofsky's continuing refusal to sign checks to pay Cuker and Williams money owed them under Schedule 4.2 of the Dissolution Agreement; (2) failing to pay WCB amounts agreed to on Schedule 1 of the Dissolution Agreement; (3) taking amounts for BLG which are greater than what was agreed to on schedule 1; and (4) violating the co-counsel provision sof the agreement as to Cuker Plaintiffs in the Flint Litigation.

**A. Berezofsky's refusal to release funds as required by the Dissolution Agreement**

14. Paragraph 4 of the Dissolution Agreement provides as follows for the following payments to be made from a WCB "operating account" established at Esquire Bank which receives a portion of fees and cost reimbursements from WCB cases:

> 4. Payments
>
> (a) It is the intent of the Members that, except as otherwise agreed by the Members, all proceeds and receipts received by WCB shall be used and paid as follows:

    (i) First, to pay administrative costs of liquidation which are ordinarily necessary to wind down the affairs of WCB, including payment of bookkeeper, accounting fees and costs to prepare all required tax returns and tax filings, maintaining the WCB Website and other such costs as agreed to by the Members ("Administrative Costs").

    (ii) Second, to trade and general obligations of WCB, including all WCB Liabilities (defined herein), including those listed on Schedule 4.1 (which may be supplemented or changed with the consent of the Members).

    (iii) Third, pro rata to each Member in proportion with his or her unpaid Contribution Amounts (in amounts as provided on Schedule 4.2 (which may be supplemented or changed with the consent of the Members) until such amounts are fully paid;

    (iv) Lastly equally to the Members, such that each Member receives 1/3 of the remaining amounts.

15. All of the expenses listed on Schedule 4.1 have been paid, except for a single one which has only gone unpaid because Berezofsky refused to authorize payment, notwithstanding her agreement to its inclusion on Schedule 4.1.

16. At this point, more than sufficient funds are in the operating account to meet all obligations; there is over $300,000 in the WCB operating account available for the payment of amounts due to the partners on Schedule 4.2. Those amounts are as follows:

  Williams:  $181,682.23

  Cuker:   $143,682.23

  Berezofsky: $ 8,791.60

17. Although the partners agreed to these disbursements when they signed the Dissolution Agreement, Esquire Bank, which acts as clearinghouse for the funds, still requires that all three partners sign any checks disbursing the funds.

18. On December 19, 2017, Williams sent an email to Berezofsky and Cuker proposing that some of the money in the account be used to reimburse the partners 10% of their contribution amounts in Schedule 4.2—a total of less than $34,000.

19. By email dated December 21, 2017, Berezofsky responded that she would not sign any checks to disburse funds due under schedule 4.2 until certain vendors who she specified—and who were NOT listed on Schedule 4.1, were paid first. Berezofsky insisted on this even though, under the agreement, expenses not on schedule 4.1 can only be paid if all three partners agree—and there is no agreement as to the expenses Berezofsky wishes to pay first. Moreover, even if all the expenses Berezofsky wanted to be included were paid, there would still have been sufficient funds at that time to disburse $34,000 to Williams and Cuker. By March 2018, well over $150,000 had accumulated in the WCB operating account and Berezofsky still refused to release ANY funds to Williams and Cuker. Among the "vendors" who Berezofsky insisted be paid first were amounts allegedly due to Berezofsky herself and her law firm.

20. On March 9, 2018, pursuant to the Dissolution Agreement, Williams made a joint mediation demand on behalf of himself and Cuker, and against Berezofsky, with a deadline of March 16 to respond. Although the DA requires that any mediation "shall be completed within thirty (30) days of a demand for mediation". Berezofsky never responded to the demand for mediation.

21. By April 2018, well over $400,000 had accumulated in the operating account, yet Berezofsky still refused to respond to multiple requests for these payments.

22. Berezofsky's refusal to sign checks which would release money due to Cuker and Williams violates the Dissolution Agreement.

23. Upon information and belief, neither Berezofsky herself nor her firm has the funds to reimburse Cuker and Williams the amounts due them under Schedule 4.2.

24. The only funds currently available to reimburse Cuker and Williams are in the WCB operating account, for which Berezofsky refuses to sign a check.

25. Plaintiffs have no adequate remedy at law because the funds necessary to repay Plaintiffs cannot be released unless Berezofsky is ordered to sign checks which will release the funds owed to Cuker and Williams.

WHEREFORE, Plaintiffs ask this Court to enter an order directing Berezofsky to promptly sign checks which would release to Cuker the amounts due him under Schedule 4.2, and awarding Cuker interest at the rate of 6 percent per annum for all amounts which have gone unpaid since December 21, 2017

**B. Berezofsky's misappropriation of fees from certain hip device cases**

26. Schedule 1 included a number of claims against Stryker and Depuy, as manufacturers of hip replacement devices. Both the Stryker and Depuy cases resulted in global settlements that enabled WCB to submit claims, supported by medical records and other relevant documents. As to virtually all of these cases, WCB clients' claims had been fully uploaded to the settlement websites, the plaintiffs had signed releases, and the parties were simply waiting to see if the claims had been approved by the settlement administrator.

27. Although Schedule 1 provided that the fees for these cases would be split as follows between WCB and BLG (listed below as "EB firm") *100% (90% if additional work needed / EB Firm / 0% (10% if additional work needed).*

28. It was mutually understood and agreed by all parties that, in this context, "additional work" justifying an allocation of 10% of the fee to BLG would only arise if a submitted claim was